### DU PONT v. DU PONT.

Circuit Court, Dade County.

October 16, 1953, March 2, 1954.

Smathers, Thompson, Maxwell & Dyer, Miami, for plaintiff.

John E. Porte, Miami Beach, and Ward & Ward, Miami, for defendant.

VINCENT C. GIBLIN, Circuit Judge.

*October 16, 1953:* This cause came on to be heard on defendant's petition to set aside an order previously entered herein setting the cause for final hearing and also upon her petition for alimony, suit money and attorney's fees, and the court having heard testimony adduced on her behalf and the argument of counsel it is upon consideration and in the presence of counsel for both parties ordered as follows—(1) The petition to set aside the order setting the cause for final hearing is granted, (2) This cause is set for final hearing before me in chambers on November 7, 1953 commencing at 10 A.M. for the purpose of hearing such testimony and receiving such proofs as shall be submitted by the parties on all issues involved in the cause, the trial will be continuous except for necessary recesses and adjournments, and the parties will be expected to have available at the scheduled time of trial all testimony and proofs on which they will rely, (3) The matter of the allowance of temporary alimony and attorney's fees is hereby deferred until the final hearing, (4) The plaintiff shall forthwith deposit with W. G. Ward, one of the attorneys of record for the defendant for her use and benefit the sum of $2,500, which said sum shall be used so far as necessary for the costs reasonably incurred in taking depositions de bene esse and for such other costs as may be reasonably incurred in the defense of this suit, (5) The said W. G. Ward shall account to this court for such sum at the final hearing of this cause.

*March 2, 1954:* Since the hearings before me (on the jurisdictional question of residence) I have reviewed the testimony adduced before me, I have studied the pertinent portions of the testimony of the twenty-six witnesses whose depositions were taken in Philadelphia and Wilmington and I have considered the documentary evidence submitted.

I find that the plaintiff has failed to prove, by a preponderance of evidence, that at the time of the institution of the suit he had been a bona fide resident of this state for the required statutory period. The finding is not based entirely on what is reflected by the cold typed transcript of the testimony. I have had the benefit and advantage of personally observing the manner and demeanor of the plaintiff as he testified before me; his obvious insincerity; his hesitancy as he endeavored to give the "right" answers to questions, his facial distortions as he underwent the ordeal of striving

to convince me, by sham indicia of residence, that this court should entertain the suit of a transient seeking release from his marital ties and obligations. My common sense and my experience in human affairs have been drawn on in evaluating his testimony. I give it no credence. The testimony of his corroborating witnesses was of no real value. They merely made the usual and routine effort of relatives, friends and acquaintances to fortify a baseless and fraudulent claim of permanent residence and their testimony did not, and could not, supply the deficiencies of the plaintiff's own testimony.

If a jury of six or twelve intelligent and honest men had been empowered to determine the facts and had heard the testimony which I heard, I am sure that the plaintiffs' testimony that he came to Florida with the intention or residing permanently in the state would have been rejected as unworthy of belief. Have I, as the trier of the facts in equity suits, less power than a jury has in a law action to decide what the truth is? Or must I accept pretense as fact in matrimonial litigation when the pretense is an insult to my intelligence?

The truth in this case is evident to me. It is that the plaintiff did not come to Florida to change his residence. He is fifty-three years of age. His family have lived in Delaware "for generations." His business and social life are centered in his home state. All of his friends live there. He is an architect; and he has practiced his profession in Wilmington, Delaware since 1931. His business is still maintained there by subordinate employees who do his bidding.

The parties were married in 1948 and separated in 1950. Litigation followed the separation. The wife prevailed; and on January 22, 1953, the court of chancery of New Castle County, Delaware, entered a decree of separate maintenance by which the husband is required to support the wife.

It was not until after he had failed to procure in the Delaware litigation an annulment of his marriage that the plaintiff "decided" to reside in Florida. He came to this state in March and entered into a contract for the purchase of a dwelling at Fort Lauderdale. He returned, however, to Wilmington, where he "resigned" as president of Massera & duPont, Inc., the corporation through which he conducts his architectural business. A subordinate salaried employee was made "president" and the plaintiff was demoted to "vice-president." The plaintiff, however, is the sole stockholder. He relinquished none of the stock and retains in fact complete control of the corporation and its business and affairs. He came back to Florida "to establish residence" on April 2, 1953.

Then followed much activity, designed for evidentiary purposes, in the effort to convince this court of the bona fides of his claimed residence. He opened a bank account with a Miami Beach bank on April 2 (the day of his arrival). He filed in the office of the clerk of the circuit court at Fort Lauderdale on April 16 a declaration of domicile. On the same day he redocumented his yacht (on which, since its purchase several years ago, he has spent considerable time in Florida during winter seasons) to change its "home port" from Wilmington to Fort Lauderdale. On April 25 he resigned his membership on the board of directors of a bank in Wilmington and his membership in the Vicmead Hunt Club in the same city. In May he obtained a Florida certificate of title to his automobile; procured a Florida driver's license; requested the insurer to endorse on the policy of insurance on the yacht the change of its "home port"; and requested several corporations of which he is a stockholder to reflect on their records his change of address. In June he took possession of his recently purchased water-front furnished dwelling at Fort Lauderdale and docked his yacht in front of the house; made the requisite utility deposits for electricity and water; opened an account with a Fort Lauderdale bank; and requested nonresident status as a Delaware architect.

He opened in July "an office" at Fort Lauderdale for the practice of his profession. The "office" is a small space in a small real estate office with which his niece's husband is connected. There are no drawing boards or other equipment needed by an architect in the "office." His name nowhere appears on the street window or elsewhere in the "office." His name is not listed in the telephone directory. In all the months since he "opened his office" at Fort Lauderdale no one has engaged the architectural services of the plaintiff. He spends no time in the "office." Its "establishment" is a palpable sham, as is his alleged "association" with a Palm Beach architect. His "business activities" in Florida have not been shown to have produced one cent of the plaintiff's income. He continues to derive all his earnings from his business at Wilmington.

In July, shortly after the expiration of the ninety-day period following his arrival in April, the plaintiff commenced this suit. It was assigned to my division. Thereafter he continued his production of evidence to fortify his claim of residence. He mailed quarterly federal employer's tax returns (reflecting compensation to his yacht captain and crew) to the collector at Jacksonville; he discharged (in August) his butler whom he had left in charge of his Wilmington residence (and who, incidentally, was immediately employed by P. S. duPont III, a close relative of the plaintiff's) ; he

notified the insurance carrier of his automobile liability and property damage insurance of his change of address; had some obsolete things sent from Wilmington to Fort Lauderdale; instructed his secretary in Wilmington to list his Wilmington residence for rent (but it has never been rented or sold) ; had the secretary notify the postal authorities to discontinue the delivery of mail to his Wilmington residence; had the secretary effect a discontinuance of telephone service to the Wilmington residence; obtained (in October) state and county and municipal licenses to engage in the architectural business at Fort Lauderdale; renewed his Florida architect's certificate (which he has had continuously since *1935*) ; and joined (in October) the Fort Lauderdale Chamber of Commerce (but he has never attended a meeting or participated in any of its activities).

The plaintiff's roots, business and social, are still in Delaware, despite his easily fabricated pretenses. During the months of April, May, June, July, August, September and October, 1953, there were no less than sixty long-distance telephone communications between the plaintiff and his business office at Wilmington. The only source of his income (aside from that derived from stocks he owns) is his corporate business at Wilmington which he owns exclusively and which he still dominates and controls. The testimony reveals no social intercourse with any resident of Fort Lauderdale. No resident of that city, other than his niece's husband (a real estate broker who negotiated the purchase of the dwelling at Fort Lauderdale and arranged for the plaintiff's "office" space in the real estate office with which the broker is connected) was produced as a witness to corroborate the plaintiff's claim of residence in that city. The plaintiff has not shown that he has engaged in any church, fraternal or civic activities at Fort Lauderdale. To its residents he has remained a secluded stranger. He has established no real or substantial ties in his new "home" city.

The plaintiff has not deceived me. Perhaps he can deceive the appellate court should he be accorded a trial de novo by that tribunal; but my judgment and conscience impel me to the conclusion I have expressed.

Accordingly, the plaintiff's bill of complaint is dismissed at the plaintiff's cost on the indicated jurisdictional ground.

Jurisdiction of the cause is retained, but only for the purposes of (a) determining the financial relief, if any, to which the defendant is entitled and enforcing and effectuating the terms and provisions of any order or decree by which such relief shall be accorded; and (b) enforcing and effectuating the terms and provisions of the order of October 16, 1953.